UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:                                                         CASE NO:

**DENISE MARIE GRAHAM**                                         09-11394

DEBTOR                                                         CHAPTER 7

### AMENDED MEMORANDUM OPINION[1]

Debtor Denise Graham claimed an exemption under La. R.S. 13:3881 for payments she earned under two personal services contracts. This memorandum explains the court's reasons for overruling the trustee's objection to the debtor's exemption claim.

### Facts

The debtor, a psychiatrist, contracted to provide consultation services for The Harmony Center, Inc. ("Harmony") and Shifa CHMC ("Shifa").[2] When Graham filed chapter 7 on September 4, 2009 she had earned but not yet received payment for her pre-petition professional services to both Harmony and Shifa. Schedule I identified her employer as Cosmetic Health & Laser Centers but also reflected that Harmony and Shifa provided "other monthly income."[3] Dr. Graham contracted Harmony to provide psychiatric consulting to the residents of The Harmony

---

[1] Nothing in this Amended Memorandum Opinion alters the ruling of the court as pronounced in the August 26, 2010 Order, which remains in effect.

[2] The debtor's February 10, 2006 agreement with The Harmony Center, Inc. is Exhibit A to Debtor's Opposition to Trustee's Objection to Claim of Exemption (P-80). The parties stipulated that the contract filed into the record as docket entry 86 governed the debtor's relationship with Shifa. *See* Supplemental Memorandum in Support of Trustee's Objection to Claim of Exemption (P-87). The incomplete agreement in the record is neither dated nor signed, but the Shifa payment advices in the debtor's case record support an inference that the agreement was in effect on December 28, 2008 and remained in effect as of August 1, 2009, more than one month before Dr. Graham filed chapter 7.

[3] P-19.

Center for four hours each week in exchange for a monthly payment of $4,000.[4]  Shifa also agreed to pay Dr. Graham monthly for her services, as the Shifa pay statements corroborate.[5]

The parties agree that Harmony and Shifa actually paid the debtor post-petition for some pre-bankruptcy services.  Although the debtor initially failed to claim an exemption for their payments, on February 11, 2010 she amended schedule C to claim an exemption under La. R.S. 13:3881(A)(1) for seventy-five percent (75%) of the compensation Harmony and Shifa owed her: $6,000 and $1,500, respectively.[6]

The trustee objects to the exemption on several grounds:

(1) the debtor was an independent contractor to whom the protections of La. R.S. 13:3881(A)(1) are inapplicable;

(2) Harmony and Shifa's debts to Graham were accounts receivable rather than earnings subject to exemption under La. R.S. 13:3881(A)(1); and

(3) the statute is inapplicable outside the context of a garnishment.

The trustee has the burden of proving that the debtor is not entitled to claim the exemptions.  Fed. R. Bankr. P. 4003(c).  Neither party disputes the few facts in the sparse evidentiary record.

---

[4]  See P-80.

[5]  Two payment advices from Shifa and three from Harmony were among the payment advices filed with the debtor's schedules.  The Shifa pay advices reflect that Shifa paid the debtor herself, and not a professional corporation or other entity the debtor controlled.  Harmony's payment advices also reflect payment directly to the debtor.  The pay advices demonstrate that the payments were for the debtor's prepetition services, a point the trustee did not challenge.

[6]  See P-68.  The payment advices attached to the debtor's original schedules reflect that Harmony owed Dr. Graham $6,000 and Shifa owed her $1,000 for the month immediately before the debtor filed bankruptcy.  No payment advices accompanied the amended schedules thus no evidence in the record established that Shifa owed the debtor another $500 for pre-petition services, as her schedules indicate.

**Analysis**

Louisiana has "opted out" of the federal exemption scheme. 11 U.S.C. §522(b)(2); La. R.S. 13:3881(B)(1). Therefore, Louisiana debtors are entitled to only those exemptions available under state law. *In re Black*, 225 B.R. 610, 614 (Bankr. M.D. La. 1998).

The relevant portion of Louisiana R.S. 13:3881(A)(1)(a) provides that:

> A. The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever, except as otherwise herein provided:
>
> (1)(a) Seventy-five percent of his disposable earnings for any week, but in no case shall this exemption be less than an amount in disposable earnings which is equal to thirty times the federal minimum hourly wage in effect at the time the earnings are payable or a multiple or fraction thereof, according to whether the employee's pay period is greater or less than one week ….
>
> (b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld and which amounts are reasonable and are being deducted in the usual course of business at the time the garnishment is served upon the employer for the purpose of providing benefits for retirement, medical insurance coverage, life insurance coverage and which amounts are legally due or owed to the employer in the usual course of business at the time the garnishment is served.

Thus, the debtor claims that seventy-five percent of Harmony and SHIFA's payments to her on account of her pre-petition services are *earnings* exempt from her bankruptcy estate.

"The starting point in the interpretation of any statute is the language of the statute itself." *M.J. Farms, Ltd. v. Exxon Mobil Corp.,* 998 So.2d 16, 27 (La. 2008). "'When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.'" *Id.*, citing La. Civil Code article 9 (citation omitted). Moreover, "Louisiana courts dictate that exemption laws are to be liberally construed in favor of the debtor." *In re Barbe*, 2006 WL

3

2403826 at *1 (Bankr. E.D. La., Feb. 17, 2006), citing *Young v. Geter,* 185 La. 709, 170 So. 240 (La. 1936); *Laurencic v. Jones*, *180 So.2d 803* (La. App. 4th Cir. 1965).

Section 3881(A)(1)(a) exempts seventy-five percent of a debtor's "disposable *earnings* for any week" from "*any* writ, mandate or process whatsoever." (Emphasis added.)[7] Section 3881(b) defines *disposable earnings* as "that part of the *earnings* of any individual remaining after" the individual's employer deducts amounts reasonably required for retirement and insurance that the employer was deducting in the usual course of business at the time of the seizure. (Emphasis added.)

    I.    Contract Employees May Claim an Exemption for Earnings under La. R.S. 3881(A)(1)

The trustee first argues that the payments from Harmony and Shifa cannot be exempt because neither entity was the debtor's employer. He relies on *Matter of Sinclair*, 417 F.3d 527 (5th Cir. 2005), in which the Fifth Circuit considered whether La. R.S. 13:3881 allowed a chapter 7 debtor to exempt salary that had been deposited directly into his checking account before bankruptcy. The Fifth Circuit held that "the disposable earnings exemption does not protect wages once they have been paid." *Id.* at 532. In focusing on the court's passing reference to the employer[8] the trustee misreads the import of *Sinclair,* which held only that the Louisiana earnings exemption applies to wages not already paid to the debtor before bankruptcy. *Sinclair* is also distinguishable because it involved a salaried teacher, not a contract employee. In any

---

[7] The statute also refers to the employee's "pay period," and Louisiana courts construing the language have held that the exemption applies to "weekly, biweekly or monthly earnings …." *Legier v. Legier*, 357 So. 2d 1203, 1206 (La. App. 4th Cir. 1978).

[8] The Fifth Circuit summarized the district court's conclusion that the exemption "only applied in the garnishment context and only to wages that were still controlled by the employer." *Sinclair*, 417 F.3d at 528. The trustee's focus on the words "garnishment context" in this quote is also misplaced.

4

case, nothing in *Sinclair* supports the conclusion that La. R.S. 13:3881 does not allow an individual contract employee to exempt a portion of her earnings.

    II.    Individual Debtors May Exempt Earnings from Personal Services Contracts

The trustee's second argument is that La. R.S. 13:3881 is inapplicable because Harmony and Shifa's obligations to the debtor were accounts receivable and their payments to her were contract payments rather than earnings. The trustee's argument proves too much.

An *account* is "a right to payment of a monetary obligation, whether or not earned by performance … (ii) for services rendered or to be rendered." La. R.S. 10:9-102(a)(2).[9] Whether Harmony and Shifa's payments to the debtor are accounts under Louisiana commercial law is not dispositive of their status as earnings under La. R.S. 13:3881(A)(1) because virtually all earnings are payments for services rendered.

Moreover, section 3881(A)(1) makes no distinction between earnings and wages, or between the earnings of salaried and hourly employees and those of independent contractors. The Louisiana Legislature merely defined *disposable earnings* as the earnings of "any individual." La. R.S. 13:3881(A)(1)(b). That definition encompasses the Shifa and Harmony payments.

Taken to its logical conclusion, the trustee's position would mean that virtually no individual debtor – whether a W-2 employee or independent contractor – could ever claim the disposable earnings exemption. That result is inconsistent with the statute and the objectives of the Louisiana exemptions laws. *Ward v. Turner*, 150 B.R. 378, 380 (Bankr. E.D. La. 1993) (noting that Louisiana's exemption statutes are intended "to provide for the subsistence, welfare, and fresh start of a debtor" and the means to support a family).

---

[9] The Louisiana Revised Statutes do not define *accounts receivable;* they have a definition only for *account*.

Nor does the statute restrict the exemption to wages paid to employees. Nothing compels the conclusion that it does not also extend to sums paid to individual contract employees when those amounts are in payment for personal services. Had the Louisiana Legislature intended to limit the exemptions to earnings of W-2 employees, it could have done so. That it did not supports the conclusion that individual independent contractors may claim the exemption.

    III.    La. R.S. 13:3881(A)(1) does not limit a Debtor's Ability to Exempt Earnings to a Single Source

Finally, the trustee suggests that La. R.S. 13:3881(A)(1) allows Dr. Graham to exempt her earnings from only a single source, Cosmetic Health & Laser Centers, the entity she identified as her employer on schedule I. The trustee again tries to read into the statute a limitation that the Legislature did not include.

The exemption statute does not restrict the disposable earnings exemption to earnings from a single employer. The Legislature knew how to do so had it intended that result.[10] Individual debtors often hold several different jobs to support themselves and their families. Limiting the earnings exemption to earnings from a single employer does not promote the purpose of R.S. 13:3881. On this record the debtor is entitled to the exemption.

---

[10] For example, Louisiana R.S. 13:3881(A)(2)(e) and (f) allow a debtor to exempt only one utility trailer and one firearm. So too, R.S. 13:3881(A)(2)(d) allows a debtor to exempt only one motor vehicle with a $7500 equity value per household.

**Conclusion**

The debtor is entitled to claim the exemption under La. R.S. 13:3881(A)(1) for her prepetition earnings of $6,000 from Harmony and $1,000 from Shifa paid to her post-petition. The trustee's objection to the debtor's exemption claims is overruled.

Baton Rouge, Louisiana, August 30, 2010.

s/Douglas D. Dodd
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE